**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO:   RDB-21-324** |
| v. | |
| **ADOLF SCOTT** | *UNDER SEAL* |

**GOVERNMENT'S SENTENCING MEMORANDUM IN SUPPORT OF A SENTENCE OF TEN YEARS FOR DEFENDANT ADOLF SCOTT**

For over a year, the defendant, Adolf Scott manipulated Victim 1 by withholding drugs from her unless she engaged in commercial sex for his personal benefit.  The defendant, aware that Victim 1 suffered from drug addiction, used that vulnerability to coerce Victim 1 to repeatedly engage in commercial sex acts.  The defendant got all of the money, and Victim 1 got drugs.  In addition to Victim 1, the defendant also supplied drugs to other addicted women who engaged in commercial sex acts.  This continued for years, and it spanned from North Carolina to Maryland.

In addition to being a pimp who supplied Victim 1 with drugs in exchange for engaging in commercial sex for his benefit, the defendant also was a drug trafficker.  The defendant purchased heroin and cocaine in Baltimore, and then took the drugs to North Carolina, where he would sell the drugs and also use the drugs as a carrot to dangle in front of Victim 1 to coerce her to engage in commercial sex acts.  After a week or two in North Carolina, the defendant and Victim 1, would then travel back to Baltimore to continue the vicious cycle.[1]

This persistent pattern of behavior all arises from the same motivation: the defendant thrives off of exerting power and control over the weak.   The defendant's criminal acts were intentional and repeated, and occurred for more than a year.   This case calls out for punishment and a significant sentence in order to protect society from the defendant, whose conduct, combined with his extensive

---

[1] See government's Attachment F page 4.

1

criminal history, demonstrates that he poses a clear and imminent threat to Victim 1.

For the reasons set forth below, this Court should impose a sentence of ten years imprisonment followed by supervised release for three years, a final order of forfeiture, and a special assessment of $100.

### I. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE/THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

#### A. The Defendant's Prior Interactions with Law Enforcement[2]

The defendant has significant contacts with law enforcement that indicate the behaviors in this instant case began years prior. On December 23, 2017, officers of the Raleigh Police Department observed a suspicious vehicle occupied by three individuals. The registered owner of the vehicle was the defendant.[3] The defendant was identified as the driver and Woman 2 and Woman 4[4] were identified as passengers. A box of condoms, a glass pipe, marijuana, and a cut straw with white powder were located inside of the vehicle. A text message on Woman 4's phone popped up asking if she was available.

Almost a year later, on September 20, 2018, officers of the Raleigh Police Department conducted a traffic stop of a vehicle driven by the defendant. Woman 2, Woman 4, and Woman 5 were also in the vehicle. Various drugs, including cocaine, heroin, and marijuana, hydromorphone pills, diazepam pills, and alprazolam pills, as well as a used syringe, were located inside the vehicle. Woman 4 was arrested. Over a year later, on October 22, 2019, Woman 4 died from an overdose inside of a hotel room in Raleigh.[5] Woman 2 found Woman 4 inside of the hotel room and called 911. The defendant told law enforcement

---

[2] See government's Attachment D.
[3] The defendant had a "watcher" alert by another officer for possibly being linked to human trafficking. A watcher is an alert in the law enforcement database to notify officers with whom a person may come in contact of their status. *Id*. at 3.

[4] Woman 4 also had a "watcher" for being on Backpage. Backpage was a website often associated with prostitution. *Id*.
[5] Woman 4 was addicted to heroin. She and the defendant shared a month and a half old baby together at the time. See government's Attachment E page 4.

2

he last saw Woman 4 the day prior when he came to visit their child. The next day, the defendant was stopped in a traffic stop. Located inside of the vehicle was marijuana, $1,860 in cash, cellphones, and an opioid overdose kit.

Just four months later, on February 5, 2020, officers of the Raleigh Police Department were conducting a security check of a hotel. They observed three individuals: a white male, a white female, and the defendant knocking on a hotel door. As the officer approached, the male walked away. Conversation with the male and female who remained revealed that the male who walked away was the defendant. The officer knocked on the door of the hotel and heard a woman's voice inside. The woman, Victim 1, refused to open the door. Victim 1 could be heard speaking with the defendant over the phone. She told him the police were at the door, and she began crying and screaming that she "wanted to go home." Victim 1 stated the defendant was her boyfriend and that the room was his. She later left the hotel with bags. Shortly after, the defendant was observed getting out of a vehicle. Officers approached and located inside of the vehicle multiple needles, a spoon, and a crack pipe. While the officer was speaking with the defendant, the defendant received a text which stated, "I can't believe I slave my body for you and now you are leaving me out on the streets."

In each of the above-mentioned incidents, law enforcement encountered the defendant with either women or drugs, both of which coincide with the facts to which he pled guilty.

### B. The Defendant's Behavior Towards Victim 1 and Other Women

The defendant was careful and calculated in choosing his women. He often explored websites which were known to attract women who were susceptible to his manipulation because of their background or vulnerabilities. Some of the sites frequented by the defendant included MegaPersonals and Skip the Games.[6] On one occasion, the defendant texted, "[w]hat's up baby this J you are very georgous [*sic*] I

---

[6] MegaPersonals and Skip the Games are known for solicitation of prostitution. Women would create an account and place ads on the websites for users to view. The ads would include provocative photos and videos, with descriptions of the services provided. It may often include pricing details or contact information to discuss pricing and other

need somebody like you with me being my number one Rider I get money also plenty but I want a rider to get more money with me be my queen I stay with the best party favors around so you always will be spoiled with that and with me you won't have to work everyday I just would love to have a rider like you by my side let me be the one to cater to you sometimes." [*sic*] [7]

He was charming in the beginning in order to get her attention. Once Victim 1 started working for the defendant, the reality of her life was far different than the picturesque image he painted. He provided her with rooms, food, and clothing. Then as time progressed, he became more aggressive, raising his voice causing her to fear him. An example of the defendant's aggression is a message he sent to Woman 2, which read "[b]itch I don't cuddle. Stupid your [*sic*] not going to do shit even if I was fuck out of here. Kicked you out because you was I'm [*sic*] my bed with them dirty as [*sic*] bando cloths on."[8]

The defendant provided drugs to Victim 1 and the women. He would withhold the drugs from Victim 1, until she had a date.[9] If Victim 1 did not want to go on dates, he would tell her she could not get drugs unless she made money.[10] Victim 1 created and posted ads on various websites, in hopes of getting men to agree to meet with her for commercial sex acts. When a "date" would come to the hotel, the defendant and the other women would leave the room and walk around until the date was over.[11]

The defendant demanded all of the money Victim 1 received. If she wanted to retain some of the money for herself, she would hide some of her money to avoid giving it to the defendant.[12] This was the

---

arrangements. See Government's Attachment A page 2.

[7] See government's Attachment B page 6.
[8] See government's Attachment C at 4.
[9] A "date" is a term used to refer to a commercial sex act. This is corroborated by a text the defendant sent to Woman 2, "? Stop texting me you cant get any dates texting me. Handle your shit. Stop acting stupid." See government's Attachment *Id*. at 4.

[10] This is corroborated by a text Woman 2 sent to the defendant, "[c]an i have a lil bit more of meds you really didn't give me that much baby please." The defendant then indicated he needed the hotel room paid for, to which she replied, "I had already made the room money." See government's Attachment B page 6.

[11] See government's Attachment F page 4.
[12] *Id* at 3.

life she lived.

    Below are some of the messages the other women sent to the defendant:

> "Makes me feel like the second I can't make u money I don't mater [sic] at all. I'm paying all this debt for garbage ass shit I don't like the new shit as much anyways. u think it helps u to keep waiting for me to make more money but it hurts u and me Bc once I'm out of shit I don't make money until I see u. Can u bring me a half at least I know debt will go back up but can't be completely without plus we hit under 2 last night so not terrible." [13]
>
> "baby can I please have some cookies the meds is making my eyes very heavy and can't stay up," [14]
>
> "[y]o I have a out call to go to at 230 will u front me a half please I will reimburse you more money with the 80 like 100 or 115" [15]
>
> "[u] left here at what time u have left us all day n night for 3 nights in a row that isn't cool bae we haven't ate shit all day u were suppose to come back to take us to get something shit now nothing will be open we haven't washed clothes yet," [16]
>
> "[h]ey why is [woman] saying u aint coming back like wtf i wanted some boy b4 i go to sleep and u never make sure we are good." [17]

The messages above demonstrate women's dependency on drugs and how the defendant exploited that vulnerability.

    Perhaps what is most troubling is the defendant's callous attitude regarding his conduct. In a recorded jail call, the defendant said he can have multiple girls in a hotel and that he is not forcing himself on "dope heads." He also said the girls are not tied up and they could leave at any time. The defendant acknowledges that he was fully aware that the women were addicted to drugs; in fact, the defendant is mocking the very thing he uses against these women by referring to them as "dope heads." [18]

    Furthermore, the defendant's comments reflect both his manipulative mindset and how he

---

[13] See government's Attachment B page 6.
[14] See government's Attachment A page 2.
[15] *Id*.
[16] *Id*.
[17] *Id*. at 3.
[18] See government's Attachment G page 3.

minimizes his role. The defendant's comment that "the girls are not tied up and they could leave any time," betrays the reality that he intentionally kept Victim 1 so isolated from others, and kept her so dependent upon him for both drugs and the necessities of life, that she did not feel as if she could leave.

### C.  The Defendant's Drug Enterprise

As previously mentioned, the defendant would purchase large quantities of drugs in Maryland and distribute them in North Carolina.[19] When referring to his drug purchases, the defendant stated he has to "get a lot at once that's why I really don't get it I have to spend at least 3 to 5 for him to see me he don't do anything small." He also discusses using someone else's scale that doesn't give the correct weight.[20]

### D.  The Defendant's Criminal History

The defendant has a 2015 conviction for possession of marijuana less than ten grams/possession of controlled dangerous substance, a 2016 conviction for possession of marijuana less than ten grams, a 2021 conviction for intentionally possessing a controlled substance by person not registered,[21] and he has a 2018 conviction for maintaining vehicle/dwelling, place for controlled substances.[22] All of the above demonstrates the defendant's prior history involving either the possession or sale of drugs. PSR ¶ 46-49. The defendant's criminal history category is a II. *Id.* at ¶ 82.

## II.   THE NEED FOR THE SENTENCE IMPOSED

### A.  To Reflect the Seriousness of the Offense/Provide Just Punishment for the Offense

The defendant knew exactly who to target; he sought out a vulnerable woman who suffered from substance abuse. Once he located Victim 1, he lured her into his world with his empty promises and

---

[19] On February 12, 2021, a search warrant was conducted on the defendant's hotel and law enforcement recovered: a plastic bag containing white substance, 32 plastic baggies, and a black scale. All of which are indicative of drug distribution. See government's Attachment H page 3.

[20] See government's Attachment B page 6.

[21] The defendant and other occupants were unresponsive in a running, parked vehicle. After officers banged on the door, they awoke, and officers observed a small amount of marijuana inside of the vehicle. The defendant was arrested, and officers recovered $420 and a white pill marked "U22."

[22] The defendant conspired with his co-defendant to transport and possess heroin, to sell cocaine, and to sell marijuana.

misleading charm.  Once she met him, she was entangled in his web of deceit.  The defendant would then take her from state to state in order to satisfy his own needs. He exploited her dependency on drugs for his own economic gain.  He convinced her to engage in commercial sex acts and give him all of the proceeds. She was taken from a familiar place to new areas, so the thought of leaving the defendant was simply not an option.

### B. To Afford Adequate Deterrence to Criminal Conduct

Transporting an individual across state lines to engage in prostitution is a serious offense.  The consequences imposed not only serve as punishment for the defendant, but also as deterrent to those who are engaged in similar activity.  Ten years is the maximum sentence the Court could impose, however, the defendant's stipulated conduct includes more than just transporting Victim 1 in interstate commerce to engage in prostitution, he also agreed to "travel[ing] with Victim 1 *and other females* back and forth from North Carolina to Maryland on a weekly basis, in order for Victim 1 and the other females, who were highly dependent on Heroin and Cocaine (a fact which the defendant had knowledge of), to engage in commercial sex." [23]  Other would-be pimps like the defendant are more likely to be deterred from this type of criminal activity if it is known that a significant sentence is imposed.

### C. To Protect the Public From Further Crimes of the Defendant

What is most telling is that although the defendant was incarcerated on these charges, he did not allow his pending charges to deter him from contacting Victim 1 and the women.[24]  The defendant was still able to control and manipulate them from behind bars.  Beginning February 2021, the defendant began his ploy to get out of jail.  He used his connections to Victim 1 and the other women to facilitate his plan. He requested them to write letters falsely stating that he was not a pimp.  He insisted that they either write letters to the commissioner or call someone.  The person with whom he was working indicated he would

---

[23] See government's Attachment I ¶ 3.
[24] See government's Attachment J.

ensure Victim 1 and the women wrote the letters and that he would, in fact, record them signing the letters. The defendant was very specific in his instructions – he directed Victim 1 and the other women to mention that they had gone on a trip for his birthday, and he also directed that one of them needed to accept responsibility for the drugs that were in his pocket.

The defendant had multiple conversations with Victim 1 and the women. When speaking with them over the phone, he told them he loved them[25] and showed a concern about how they were doing. In addition to manipulating their emotions with his loving words, he also played on their weaknesses. He asked if they were getting enough drugs and promised to make sure they were "straight" and had "everything they need[ed]."

The defendant's concern was disingenuous. He did not care for their wellbeing, rather he cared for what they could do for him while he was incarcerated – and how to help him get out. He instructed them to put money on his account, as well as other inmates' accounts. He also instructed them to write letters that would assist with his case, and he instructed them to move their things out of the storage unit. Most importantly, he told them to remain loyal to him. In the conversations with Victim 1, he told her that he needed her help to get out and asked if she had his back. He stated that if she had his back and did not talk to anyone, he would be "good," and his charges would be dropped. He also assured her that if the "girls" were on his side, he would be released.

It is abundantly clear that the defendant's arms can stretch far beyond the walls of any prison to influence others, including victims and witnesses. The defendant has mastered the ability to manipulate and control without being physically present. He is fully aware that once he has control over someone's mind, the rest will follow. It is unquestionable that the community is much safer if the defendant remains incarcerated for ten years.

---

[25] The defendant would tell multiple women that he was going to marry them once he was released and that he was going to impregnate them.

### III. GUIDELINE CALCULATION

#### A. Statutory Maximum Sentence

The statutory maximum penalty for a violation of 18 U.S.C. § 2421, based on the date of the offense, is 10 years imprisonment. PSR ¶ 81. The Court may impose a term of supervised release of not exceeding three years, pursuant to 18 U.S.C. § 3583(b).

#### B. Sentencing Guidelines Calculation

The Probation Office has calculated that the total offense level, after acceptance of responsibility, as 33. *Id*. at 41. The defendant's criminal history category is II. *Id*. at 50. Based on a total offense level of 33 and a criminal history category of II, the guideline range is 151 months to 188 months, but because the statutory maximum sentence is 10 years, the applicable guideline range is 10 years imprisonment. *Id*. at 82. The government agrees with this calculation and asks that the court adopt the PSR's guidelines calculation at the time of sentencing.

### IV. THE 18 U.S.C. § 3553(a) FACTORS DEMONSTRATE THAT THE DEFENDANT SHOULD BE SENTENCED TO 10 YEARS IMPRISONMENT

The nature and circumstances of the defendant's crimes are disturbing, and strongly weigh in favor of a lengthy sentence. The defendant engaged in a pattern of sexual exploitation of Victim 1, a vulnerable young woman who suffered from substance abuse. The defendant also distributed narcotics and possessed with the intent to distribute narcotics. He used his charm to connect to women through websites designed to attract people like himself. He knew Victim 1's vulnerabilities and instead of aiding her in a better life for herself, he exploited her and enabled her addiction.

### V. VICTIM IMPACT AND CONSIDERATION

As the Court certainly understands, this has been a difficult journey for Victim 1 who is scarred by the defendant's abuse and continues her road to recovery.[26] The bravery she demonstrated

---

[26] Following the defendant's guilty plea, Victim 1 informed government counsel that she would not be attending the hearing or submitting a victim impact statement.

9

during this investigation is astounding. Although she continues the daily struggle that is her life, this conviction gave her a voice. Victim 1's mother has provided a statement for the Court to consider. She states, "[t]his man who had my daughter, he took me from seeing the blue sky to knowing hell. To this day, I do not sleep well. I have developed anxiety, and seeing my daughter dying, day by day. It's the saddest thing I can imagine living through. My daughter has not spoken or smiled for many months, she only sleeps and has deep depression. It has been a very difficult process, accompanied by many tears."[27]

## VI. CONCLUSION

The government agreed to an 11(c)(1)(C) plea of between five to ten years. Assuming the Court accepts the "C plea," the defendant's conduct, the maximum sentences, and the guidelines necessitate the maximum sentence allowed under the plea agreement. Not just for Victim 1. The defendant's sentence should also consider his actions towards the other women he encountered.

For all of these reasons, the government respectfully asks this Court to sentence the defendant to ten years' imprisonment, followed by supervised release for three years, with all of the conditions recommended by U.S. Probation. The government also asks the Court to imposed a $100.00 special assessment and enter a final order of forfeiture.

Respectfully submitted,

Erek Barron
United States Attorney

By: *Toi M. Mason*
Toi Mason
Special Assistant United States Attorney

---

[27] See government's Attachments K and L.